**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

NEVADA WALKER,

       Plaintiff,

v.                                      Case No: 8:15-cv-471-T-35TGW

SOUTHERN AUTO FINANCE
COMPANY,

       Defendant.

_____

**ORDER**

**THIS CAUSE** comes before the Court for consideration of the Motion to Compel

Arbitration (Dkt. 7) filed by Defendant, Southern Auto Finance Company ("SAFCo"), the

Response in opposition thereto filed by Plaintiff, Nevada Walker, (Dkt. 14-1), and

Defendant's Reply in support (Dkt. 18).   Upon consideration of all relevant filings, case

law, and being otherwise fully advised, the Court **GRANTS** Defendant's Motion to Compel

Arbitration.

    **I.**    **BACKGROUND**

Plaintiff originally filed this matter in Florida state court, alleging violations of the

Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Fair Debt Collection

Practices Act, 15 U.S.C. § 1601 ("FDCPA"), and the Florida Consumer Collection

Practices Act, Fla. Stat. 559.72(7) ("FCCPA").   (Dkt. 2)   Defendant removed the matter

to this Court based on federal question jurisdiction.   (Dkt. 1)

In sum, Plaintiff alleges that during the twenty-four months prior to the filing of the

complaint, Defendant called Plaintiff's cellular telephone without Plaintiff's express

consent using an automated telephone dialing system.   (Dkt. 2 at ¶ 10)   To the extent Plaintiff ever did consent to such calls, she alleges she revoked that consent by expressly, and repeatedly, notifying Defendant to stop calling her.   (Id. at ¶ 12; Dkt. 2-1)   Moreover, Plaintiff alleges that the calls continued even after she informed Defendant that she was represented by counsel regarding the alleged consumer debt.   (Dkt. 2 at ¶¶ 12, 25)   The nature of the underlying debt—*i.e.* how it arose—is not clear from the complaint.

In the motion Defendant requests the Court to compel arbitration in this matter pursuant to the arbitration provision found in a Retail Installment Sale Contract ("the Contract") between Plaintiff and Lokey Nissan in Clearwater, Florida for the "financ[ing] [of] the purchase of a 2011 Nissan Rogue Mitsubishi Eclipse." [1]   (Dkt. 7 at 2) Defendant's motion is supported by the declarations of Gary A. Stein, Defendant's Chief Financial Officer, (Dkt. 7-1; Dkt. 18-2), and a copy of the Contract, purportedly between Plaintiff and SAFCo's predecessor in interest, Lokey Nissan, is attached as an exhibit to the declaration, (Dkt. 7-1 at 5–6); however, because that version is somewhat unintelligible, a higher resolution scan of the Contract was attached to Defendant's reply, (Dkt. 18-1).

Mr. Stein explains that SAFCo is an automotive finance company that provides financing for vehicle purchases.   (Dkt. 7-1 at 2)   He attests that "[o]n or about August 13, 2014, Walker entered into a Retail Installment Sale Contract (the 'Contract') with Lokey Nissan in Clearwater, Florida for the purchase of a 2011 Nissan Rogue Mitsubishi Eclipse."   (Id.)   "The Contract contains an assignment provision whereby Lokey Nissan assigned its interest in the Contract to SAFCo on the same day that the Contract was

---

[1]  The Court notes that a Nissan Rogue and a Mitsubishi Eclipse are two different vehicles.   The Contract appears to reference solely the sale of a Nissan Rogue.   (Dkt. 7-1 at 5; Dkt. 18-1 at 2)

executed."   (Id. at 3); see also (Dkt. 18-1 at 4) (Contract term stating that "Seller assigns its interest in this contract to Southern Auto Finance (Assignee) under the terms of the Seller's agreement(s) with Assignee.")   Moreover, Mr. Stein avers that Defendant "is the current owner and holder of the Contract" and that it "has not assigned the Contract to any other person since it was assigned to SAFCo."   (Dkt. 7-1 at 3)   As explained more fully below, he establishes that the Contract is admissible as a business record and it is a regular and routine practice of SAFCo to keep and maintain such records.   Finally, Mr. Stein establishes that he has obtained this knowledge via his review of business records kept by Defendant in the normal course of its business.   (Id. at 2; Dkt. 18-2 at 3)

The arbitration clause provides:

> **1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL**.
> . . .
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Dkt. 18-1 at 7) (emphasis in original)

In response Plaintiff argues that she "has not alleged that this matter arises from any agreement or relationship between the parties."   (Dkt. 14-1 at 2)   She contends further that "nothing in the four corners of Plaintiff's complaint can be reasonably construed to invoke or refer to a vehicle or a credit application in any way and nothing in Plaintiff's pleadings suggests the existence of [a] relationship between the parties."   (Id.)

Rather, Plaintiff asserts that this matter arises "solely from Defendant's decision [to] repeatedly bombard Plaintiff with 'robo telemarketing calls' after she specifically told them not to do so."   (Id.)

Plaintiff also attacks the Stein Declaration, stating "the affidavit is purely based upon alleged business records that were produced by an unnamed third party. . . .  The material portions of said declaration are not supported by any first-hand knowledge of the affiant."   (Id. at 3)

First, with respect to the affidavit, there is no requirement under Fed. R. Evid. 803(6) that a person with "first-hand knowledge" lay the foundation for a business record. Rather,

> Rule 803(6) permits the introduction of business records through a custodian or qualified witness.  To be admitted on such grounds, the person who actually prepared the documents need not have testified so long as other circumstantial evidence and testimony suggest[s] [the documents] trustworthiness.  It is not essential that the offering witness be the recorder or even be certain of who recorded the item.  It is sufficient that the witness be able to identify the record as authentic and specify that it was made and preserved in the regular course of business.

PNC Bank, Nat. Ass'n v. Orchid Group Investments, L.L.C., 36 F. Supp. 3d 1294, 1301 (M.D. Fla. 2014) (alterations in original) (citations and quotations marks omitted).

Stein attests in his affidavit that he is SAFCo's Chief Financial Officer.  In that capacity he has familiarity with the records of SAFCo and has, therefore, a basis to attest to the content of, and the method of creating and maintaining, those records.  Stein's declarations state that the Contract was made at or near the time of the events recorded, by a person with knowledge, and it is kept in the course of SAFCo's regular business activity.  (Dkt. 7-1 at 2–3; Dkt. 18-2 at 3)  He further avers that "SAFCo has no reason

to question the trustworthiness of the Contract and in fact relies on the Contract to keep track of payments due SAFCo from Walker as a result of SAFCo financing the purchase of the Nissan Rogue . . . by Walker."  (Dkt. 18-2 at 3)

Plaintiff also argues that the purported assignment provision and the remainder of the Contract is illegible; however, that issue has been remedied by the higher resolution version of the Contract attached to the reply.  (Dkt. 18-1)  Similarly, Plaintiff provided an affidavit in which she attests that her signature is not legible on the page of the initial Contract exhibit.  (Dkt. 12)  She also asserts that her claims here do not involve the purchase of an automobile, a credit application, or a purchase contract between herself and the Defendant.  (Id. at 2)  Rather, her claims arise solely from her consumer law rights.  (Id.)

In light of Plaintiff's dispute regarding the existence of a valid arbitration agreement, she requests that the Court, pursuant to 9 U.S.C. § 4, proceed summarily to a jury trial to determine whether an agreement to arbitrate exists, and if so, the terms of such agreement.  (Dkt. 14-1 at 4)

## II.    STANDARD OF REVIEW

Pursuant to the Federal Arbitration Act ("FAA"), any arbitration agreement within the scope of the parties' contract is valid, enforceable, and irrevocable.  9 U.S.C. § 2. Under the FAA, the Court must first determine whether a valid agreement to arbitrate exists.  Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992).  If a valid agreement to arbitrate exists, the FAA requires the Court to direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been entered. See id.   Similarly, under Florida law, a clause in a contract requiring the parties to submit

their claims to arbitration is enforceable. See Sims v. Clarendon Nat'l Ins. Co., 336 F. Supp. 2d 1311, 1315, (S.D. Fla. 2004) (recognizing that where a contract specifies that state law will be applied, that provision will ordinarily be given effect in deciding the parties' right to arbitrate); see also Sears Authorized Termite & Pest Control, Inc. v. Sullivan, 816 So. 2d 603, 606 (Fla. 2002) ("[A]rbitration clauses are enforceable and favored when the disagreement falls within the scope of the arbitration agreement."). Thus, the question of whether a dispute is subject to arbitration, under both the FAA and Florida law, depends on (1) whether a valid arbitration agreement exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived. Granite Rock Co. v. Int'l Bros. of Teamsters, 130 S. Ct. 2847, 2856–57 (2010); Laizure v. Avante at Leesburg, Inc., 44 So. 2d 1254, 1257 (Fla. 5th DCA 2010). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

"Federal courts confronted with motions to compel arbitration are only authorized to address 'issues relating to the making and performance of the agreement to arbitrate' itself, not general challenges to the contract containing an arbitration clause as a whole." Home Quality Mgmt., Inc. v. Ace Am. Ins. Co., 381 F. Supp. 2d 1363, 1366 (S.D. Fla. 2005) (citing Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 404 (1967); Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 881 (11th Cir. 2005)).

Section 2 of the FAA provides that arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by

'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1746 (2011) (quoting Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

"The party opposing arbitration 'has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration,' which is a burden 'not unlike that of a party seeking summary judgment.'" Bhim v. Rent-A-Ctr., Inc., 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (quoting Aronson v. Dean Witter Reynolds, Inc., 675 F. Supp. 1324, 1325 (S.D. Fla. 1987)); see also Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 Fed. Appx. 782, 785–86 (11th Cir. 2008) ("[W]e agree that '[o]nly when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.'" (quoting Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980))).

## III.   DISCUSSION

"The party resisting arbitration must unequivocally deny that an agreement to arbitrate was reached and must substantiate the denial of the agreement with enough evidence to make the denial colorable." Owings v. T-Mobile USA, Inc., 978 F. Supp. 2d 1215, 1223 (M.D. Fla. 2013) (citing Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 Fed. Appx. 782, 785 (11th Cir. 2008)); see also Wheat, First Sec., Inc. v. Green, 993 F.2d 814, 817 (11th Cir. 1993). "Once an agreement to arbitrate is thus put 'in issue,' the Federal Arbitration Act (FAA) requires the district court to 'proceed summarily to the

trial thereof' and if the objecting party has not requested a jury trial, 'the court shall hear and determine such issue.'"   Magnolia Capital Advisors, 272 Fed. Appx. at 785 (quoting 9 U.S.C. § 4).

Plaintiff has failed to unequivocally deny that she entered into the Contract containing the above arbitration provision.  Instead, Plaintiff argues her signature is illegible, that she did not execute any documents in the presence of Mr. Stein, and that, in her estimation, the claims here do not involve the Contract.  (Dkt. 12)  Notably, nowhere in Plaintiff's affidavit does she deny entering into the Contract.  Thus, her challenges do not constitute an unequivocal denial of the existence of an agreement to arbitrate.

Moreover, the Court need not address whether the claims at issue here are arbitrable, as the arbitration provision calls for "the arbitrability of the claim or dispute" to be decided by the arbitrator.   (Dkt. 18-1 at 7)   The law is well settled that the parties may choose to have arbitrators resolve even the question of arbitrability.   U.S. Nutraceuticals, LLC v. Cyanotech Corp., 769 F.3d 1308, 1311 (11th Cir. 2014) ("[O]rdinarily, 'the question of arbitrability ... is undeniably an issue for judicial determination[ ] [u]nless the parties clearly and unmistakably provide otherwise....'" (alterations in original) (quoting AT & T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986))); see also Hall St. Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 586 (2008) ("Hall Street is certainly right that the FAA lets parties tailor some, even many, features of arbitration by contract, including . . . which issues are arbitrable . . . ." (citation omitted)).

Finally, Plaintiff's argument that the claims here are completely disconnected from the Contract fails as both the FDCPA and FCCPA claims require "consumer debt" to be

at issue.   See, e.g., Bolanos v. First Investors Servicing Corp., 10-23365-CIV, 2010 WL

4457347, at *2 (S.D. Fla. Oct. 29, 2010) ("Bolanos could not even maintain this action

without reference to the financing contract because the contract is necessary to show that

Bolanos is a 'consumer' and that the underlying 'debt' exists-two prerequisites to filing

suit under the FDCPA and FCCPA."); Pescatrice v. Orovitz, 539 F. Supp. 2d 1375, 1378

(S.D. Fla. 2008) ("The elements of an FDCPA claim include: '(1) the plaintiff has been the

object of collection activity arising from consumer debt, (2) the defendant is a debt

collector as defined by the FDCPA, and (3) the defendant has engaged in an act or

omission prohibited by the FDCPA.'" (quoting Fuller v. Becker & Poliakoff, P.A., 192 F.

Supp. 2d 1361, 1366 (M.D. Fla. 2002))).   Indeed, contrary to Plaintiff's protestations in

the response, an exhibit to the complaint confirms that the collection calls did arise out of

Plaintiff's financial relationship with SAFCo.   In response to an email from "Georgina

Mercado <GMercado@gosafco.com>,"[2] Plaintiff states: "I have told multiple people that

the October payment will be made, I am awaiting a banking error/issue to be cleared up

before I can do so."   (Dkt. 2-1 at 18)

Accordingly, the motion is due to be granted.   The arbitrator is to decide whether

the claims raised here are arbitrable.   Should the arbitrator decide they are not, Plaintiff

may re-file the matter.

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1.  Defendant's Motion to Compel Arbitration (Dkt. 7) is **GRANTED**.

---

[2] The Court notes that gosafco.com appears to be SAFCo's internet homepage.

2. The parties are **ORDERED** to arbitrate all claims pursuant to the Contract's arbitration provision.

3. The Complaint is **DISMISSED without prejudice**.

4. The Clerk is directed to **TERMINATE** any pending motions and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 24th day of April, 2015.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person